**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **JOSHUA L. CHELI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-cv-03085** |
| | ) | |
| **TAYLORVILLE CUSD #3, BOARD** | ) | |
| **OF EDUCATION OF TAYLORVILLE** | ) | |
| **CUSD #3, GREGG FUERSTENAU,** | ) | |
| **and CHRIS KUNTZMAN,** | ) | |
| **individually and as agents of** | ) | |
| **TAYLORVILLE CUSD #3,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Taylorville CUSD #3, Board of
Education of Taylorville CUSD #3, Gregg Fuerstenau, and Chris
Kuntzman, individually and as agents of Taylorville CUSD #3,
("Defendants") Motion for Summary Judgment (d/e 44) and Plaintiff
Joshua L. Cheli's Cross-Motion for Summary Judgment (d/e 45).
For the following reasons, Defendants' Motion for Summary
Judgment (d/e 44) is GRANTED and Plaintiff's Cross-Motion for
Summary Judgment (d/e 45) is DENIED.

## I.    FACTS

The Court draws the following facts from the parties' Local Rule 7.1(D)(1)(b) statements of undisputed material facts.  The Court discusses any material factual disputes in its analysis. Immaterial facts or factual disputes are omitted.  Any fact submitted by any party that was not supported by a citation to evidence will not be considered by the Court.  See Civil LR 7.1(D)(2)(b)(2).  In addition, if any response to a fact failed to support each allegedly disputed fact with evidentiary documentation, that fact is deemed admitted.  Id.

Plaintiff Joshua Cheli began employment in September 2014 as a computer systems administrative assistant for the Taylorville Community Unit School District #3 (CUSD #3).

On September 28, 2018, Plaintiff met with his supervisor, Defendant Chris Kuntzman, and CUSD #3 Superintendent Defendant Gregg Fuerstenau.  During the meeting, Plaintiff was informed that he was being fired because a female student had reported that Plaintiff made her feel uncomfortable.  Plaintiff denied any misconduct; however, Defendants informed Plaintiff that there was nothing he could say to change things, that his termination of

employment was a foregone conclusion, and that Plaintiff could resign, or he would be terminated.  Plaintiff was not informed that he could bring someone to the meeting to speak on his behalf.

On October 12, 2018, Plaintiff received by certified mail a Notice of Termination from the Board of Education of CUSD #3 (the Board) dated October 9, 2018, but retroactive to September 28, 2018.  The Notice of Termination was based on a resolution of the Board, which authorized the President of the School Board or Superintendent of the School District to serve Plaintiff's Notice of Termination.

Article I of the Master Agreement between the Board and Taylorville Educational Support Personnel in effect at the time Plaintiff's employment was terminated recognized the Taylorville District 3 Educational Service Personnel IEA/NEA as the sole and exclusive negotiating agent for full-time cooks, custodians, secretaries, and aids (the "collective bargaining unit").  Article III provided a grievance procedure for alleged violations of the provisions of the Master Agreement, including the right to representation.  Article IV and VII required an employee signature on an authorization form for membership payroll deductions, or

that employees who did not join the Association pay a fair share fee, to be subject to the Master Agreement.  Article VIII required a conference with the right to a representative prior to any suspension or discharge.  The Master Agreement also contained the salary schedules for all personnel subject to the Master Agreement.

The Educational Support Personnel Policy indicates that employees not covered by a current applicable bargaining agreement will have their salary and wages determined by the Board.

Plaintiff's salary for 2018 was $34,953.00.  Plaintiff did not provide his signature on an authorization form for deductions as required for members of the collective bargaining unit, did not have membership dues deducted from his paycheck, and did not pay a fair share fee.  Plaintiff's salary for the 2018-2019 school year was not included in the salary schedules in the Master Agreement. Plaintiff did not submit a grievance pursuant to Article III of the Master Agreement because of the termination of his employment.

On April 1, 2019, Plaintiff filed a two-count Complaint (d/e 1) against Defendants, alleging that Defendants violated his procedural due process rights under the Fourteenth Amendment

when terminating his employment with the Taylorville Community
School District #3 (the "District").  On May 31, 2019, Defendants
filed a Motion to Dismiss (d/e 8) Plaintiff's Complaint, arguing that
Educational Support Personnel like Plaintiff were at-will employees
with no property interest in his employment with the District, and
thus not entitled to due process rights.  On July 22, 2019, the
Court entered a text order granting Defendants' Motion to Dismiss
with leave for Plaintiff to file an Amended Complaint on or before
August 5, 2019.  On July 23, 2019, Plaintiff filed his First Amended
Complaint, alleging that he had a protected property interest in his
employment in accordance with Article VIII of the Master
Agreement.  d/e 13, ¶ 22.  On August 16, 2019, Defendants filed a
Motion to Dismiss (d/e 14) and Memorandum of Law in Support
(d/e 15), arguing that Plaintiff had no property interest in his
employment under Illinois law or by a clearly implied promise of
continued employment.  On May 29, 2022, the Court granted
Defendants' Motion to Dismiss the Amended Complaint with leave
for Plaintiff to file a Second Amended Complaint on or before June
12, 2020 (d/e 18).  On June 16, 2020, Plaintiff filed a Notice of
Appeal.  On February 25, 2021, the Seventh Circuit issued a

Mandate reversing the ruling of the Court and remanding the case for further proceedings consistent with its Opinion. d/e 24; <u>Cheli v. Taylorville Cmty. Sch. Dist.</u>, 986 F.3d 1035 (7th Cir. 2021).  The Seventh Circuit found that the collective bargaining agreement established that Plaintiff could not be terminated except "for reasonable cause," which created a protected property interest for which Plaintiff was entitled to due process.  <u>Id.</u> at 1037.

On April 25, 2022, Defendants filed their summary judgment on Plaintiff's claims (d/e 44).  On May 15, 2022, Plaintiff filed his Response and cross-motion for summary judgment (d/e 45).  On June 6, 2022, Defendant filed a Reply to Plaintiff's Cross Motion (d/e 46).

## II.    JURISDICTION AND VENUE

This Court has subject matter jurisdiction because Plaintiff's claims arise under 42 U.S.C. § 1983, which is a federal statute.  <u>See</u> 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").  Venue is proper because the events giving rise to Plaintiff's claims occurred in Taylorville, Illinois, which is located within the boundaries of the Central District of

Illinois.  See 28 U.S.C. § 1391(b)(2) (stating that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

### III.  LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the nonmoving party.  Carroll v. Lynch, 698 F.3d 561, 564 (7th Cir. 2012).  When ruling on a motion for summary judgment, the Court must construe facts in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor.  Woodruff v. Mason, 542 F.3d 545, 550 (7th Cir. 2008).  "At summary judgment, 'a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.'" Paz v. Wauconda Healthcare & Rehab. Ctr., LLC, 464 F.3d 659, 664 (7th Cir. 2006).

The movant bears the initial responsibility of informing the Court of the basis for the motion and identifying the evidence the

movant believes demonstrates the absence of any genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Modrowski v. Pigatto, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary" (internal citation omitted)).  After the moving party does so, the non-moving party must then go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quotation and footnotes omitted).

The above-stated standards for summary judgment remain unchanged when considering cross-motions for summary judgment: the Court must "construe all inferences in favor of the party against whom the motion under consideration is made."  Oneida Nation v. Vill. of Hobart, Wis., 371 F. Supp. 3d 500, 508 (E.D. Wis. 2019) (quoting Metro. Life Ins. Co. v. Johnson, 297 F.3d 558, 561–62 (7th Cir. 2002)).

## IV.   ANALYSIS

**A. Whether Plaintiff is subject to the Master Agreement and a member of the collective bargaining unit is a fact issue arising for the first time post-remand.**

The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." <u>Flynn v. FCA US LLC</u>, 39 F.4th 946, 953 (7th Cir. 2022) (citing <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983)).  The doctrine bars arguments for reconsideration that are not based on intervening authority, new evidence, or other changed circumstances that justify waiver of the doctrine.  <u>Vidimos, Inc. v. Wysong Laser Co., Inc.</u>, 179 F.3d 1063, 1065 (7th Cir. 1999).  However, the law of the case doctrine only applies to issues that have been resolved, generally leaving a district judge free to address issues that the appellate court left undecided.  <u>Moore v. Anderson</u>, 222 F.3d 280, 282 (7th Cir. 2000). A district court considering a case on remand may only address "(1) the issues remanded, (2) issues arising for the first time on remand, or (3) issues that were timely raised before the district and/or appellate courts but which remain undecided." <u>United States v. Morris</u>, 259 F.3d 894, 898 (7th Cir. 2001).

Plaintiff argues that the law of the case doctrine bars the Court from reconsidering the issue of the applicability of the Master

Agreement to Plaintiff because the Defendants waived the issue on appeal. On appeal, the Seventh Circuit reversed this Court's dismissal without prejudice and remanded the case for further proceedings consistent with the opinion that determined that the Master Agreement created a protected property interest in Plaintiff's employment (d/e 24). The Seventh Circuit noted that "Cheli and the defendants agree that the only issue on appeal is whether the Master Agreement gave Cheli a protected property interest in his employment." Cheli v. Taylorville Cmty. Sch. Dist., 986 F.3d 1035, 1039 (7th Cir. 2021). The question on appeal was "whether the Master Agreement provided [that] the District could only terminate Cheli for cause." Id.

The Court finds that the applicability of the Master Agreement to Plaintiff is an issue arising for the first time post-remand, and that the Court may address it. On appeal, the Court granted Defendants' Motion to Dismiss Plaintiff's First Amended Complaint and Memorandum of Law in Support. "The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits." Devine v. Robinson, 131 F. Supp. 2d 963, 967 (N.D. Ill. 2001). When evaluating a 12(b)(6) motion, the

court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Gastineau v. Fleet Mortgage Corp., 137 F.3d 490, 493 (7th Cir. 1998).

In ruling on the 12(b)(6) motion, the Court did not, and did not have the power to, make factual findings. See Szabo v. Bridgeport Mach., Inc., 249 F.3d 672, 675 (7th Cir. 2001) ("The reason why judges accept a complaint's factual allegations when ruling on motions to dismiss under Rule 12(b)(6) is that a motion to dismiss tests the legal sufficiency of a pleading. Its *factual* sufficiency will be tested later—by a motion for summary judgment under Rule 56, and if necessary by trial."). When the Court granted Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, the Court did so accepting as true the facts in Plaintiff's First Amended Complaint, including Plaintiff's allegation that his protected property interest stemmed from the Master Agreement. See d/e 18. Moreover, the Court's ruling was made prior to the parties conducting discovery.

Compliance with the Seventh Circuit's decision requires the Court to find that the Master Agreement created a protected

property interest in Plaintiff's employment.  However, the Seventh
Circuit did not address the threshold question of whether the
Master Agreement applied to Plaintiff.  Instead, it accepted as true
all well-pleaded facts, including the applicability of the Master
Agreement to Plaintiff, as required by Rule 12(b)(6).  Defendants do
not seek to re-litigate the issue of whether the Master Agreement
gives Plaintiff a protected property interest in his employment.
Rather, Defendants argue that, as a fact issue, Plaintiff is not
subject to the Master Agreement in the first place.  Whether Plaintiff
was a party to the Master Agreement and a member of the collective
bargaining unit is question of fact arising for the first time post-
remand.  Therefore, Defendants may raise the issue on summary
judgment.

### B. The affidavits of Defendants Fuerstenau and Kuntzman do not properly authenticate the Non-Bargaining Unit personnel sheets, but the affidavits themselves are material and arise from the Defendants' personal knowledge.

As a preliminary matter, Plaintiff argues that the Court should
not rely on the affidavits of Defendants Fuerstenau, Superintendent
of the District, and Kuntzman, Plaintiff's supervisor.  The Court
addresses each argument in turn.

**1. The affidavits of Defendants Fuerstenau and Kuntzman do not properly authenticate the Non-Bargaining Unit personnel sheets.**

Plaintiff argues that the affidavits of Fuerstenau and Kuntzman are "self-serving" and do not properly authenticate the Non-Bargaining Unit personnel sheets submitted by Defendants. See Ex. 5.  The personnel sheets contain multiple tables purportedly listing positions within the District that are classified as non-bargaining salaries or positions not a member to the collective bargaining unit.  Id.  Plaintiff also argues that the personnel sheets are external to the four corners of the Master Agreement and are specifically prohibited by Article XI: "The terms and conditions set forth in this Agreement represent the full and complete understanding of the parties.  The terms and conditions may be modified only through the written mutual consent of the parties."  The Court need not decide that question, however, because as discussed below, the Court finds that Plaintiff is not a party to the Master Agreement, so the contract does not apply to him.

Federal Rule of Civil Procedure 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact

cannot be presented in a form that would be admissible in evidence."  Plaintiff objects that the information contained in the Non-Bargaining Unit personnel sheets is hearsay and does not qualify for the business record exception to the hearsay rule.

Federal Rule of Civil Procedure 56(e) states that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  A document is admissible as a business record under Federal Rule of Evidence 803(6) if: "1) the acts recorded therein were reported by a person with knowledge, 2) it was the regular practice of the [business] as a regularly conducted business activity to record such acts, 3) the acts were recorded at or near the time of their occurrence, and 4) the documents are properly authenticated 'unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.'"  Wheeler v. Sims, 951 F.2d 796, 802 (7th Cir. 1992).  Normally, to demonstrate such trustworthiness and reliability at the summary judgment stage, the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to

introduce the record as evidence at trial, for example, a custodian
or anyone qualified to speak from personal knowledge that the
documents were admissible business records." Woods v. City of
Chi., 234 F.3d 979, 988 (7th Cir. 2000).

An exception to the rule applies when the party challenging
the document as admissible evidence has itself relied on that
document or "otherwise conceded the accuracy of the documents."
Thanongsinh v. Bd. of Educ., 462 F.3d 762, 778 (7th Cir. 2006)
(quoting Woods, 234 F.3d at 988).  It is within the discretion of the
district court to determine whether such evidence should be
admitted.  See Pierce v. Atchison Topeka & Santa Fe Ry. Co., 110
F.3d 431, 444 (7th Cir. 1997).  "[A] foundation for admissibility may
at times be predicated on judicial notice of the nature of the
business and the nature of the records as observed by the court."
Mehta v. Council for Jewish Elderly, No. 95 C 1156, 1996 WL
272520, at *5 (N.D. Ill. May 20, 1996).

Exhibit 4 contains a list of positions in the District considered
non-bargaining unit personnel, or non-members of the collective
bargaining unit.  d/e 44.  The Exhibit does not indicate when it was
made and does not identify its creator.  The Court agrees with the

Plaintiff and finds that the Non-Bargaining Unit personnel sheets are inadmissible as business records because Defendants have not laid any foundation for their admission.  In their affidavits, Fuerstenau and Kuntzman both state that "[t]he records referred to in the motion for Summary Judgment are true and accurate copies of [Plaintiff's] employee file and District policies, kept in the ordinary course of business" and that the statements made in the affidavits are within their "personal knowledge."  d/e 44, Ex. 3, Ex. 5.  While the affidavits state that the personnel sheets were kept in the ordinary course of business, they contain no statements as to whether it was the regular practice of the District to make such records or if the personnel sheets were made at or near the time by, or from information provided, persons with knowledge of the activity reflected in the sheets.  Defendants have not laid a proper foundation through either affidavit to admit the personnel sheets under the business records exception.

Accordingly, without proper authentication, the personnel sheets are inadmissible hearsay.  See Campbell v. Coca-Cola Enterprises, Inc., No. 11 C 1674, 2012 WL 182211, at *4 (N.D. Ill. Jan. 18, 2022) (holding, on summary judgment, that evidence is

inadmissible because of defendant's failure to lay a proper
foundation to meet the business record exception to hearsay);
Marine v. H.J. Mohr & Sons, Co., No. 04 C 2989, 20025 WL
2293673, at *15 (N.D. Ill. Sept. 19, 20025) (same).

Defendants argue that Plaintiff has previously relied upon
other records produced by Defendants, specifically the Master
Agreement and the District's Educational Support Personnel
policies, and that the personnel sheets list all non-bargaining
employees in the District, not just Plaintiff.  An examination of the
record reveals that Plaintiff has never conceded the admissibility of
the personnel sheets.  Plaintiff never admitted in discovery that the
personnel sheets are what the Defendants purport them to be.  In
fact, Plaintiff's response to number 13 of Defendants' Request to
Admit explicitly questions the authenticity of the personnel sheets.
d/e 44, Ex. 7; but see Thanongsinh, 462 F.3d at 778 (finding that
defendant conceded admissibility of business record because
defendant admitted that the document is what it purports to be in
its response to plaintiff's interrogatories).  Therefore, Defendants
Fuerstenau and Kuntzman's affidavits do not properly authenticate
the Non-Bargaining Unit Personnel sheets, and the Court will not

consider them in its ruling on Defendants' Motion for Summary Judgement and Plaintiff's Cross-Motion for Summary Judgment.

## 2. The statements in the affidavits themselves are material and based on personal knowledge.

Plaintiff argues that Fuerstenau's statement that Plaintiff was not a member of the bargaining unit is an inadmissible lay witness opinion because there lacked foundation that Fuerstenau at least had read the Master Agreement. Plaintiff also argues that Kuntzman's statement that it was "usual practice" to tell Technology Assistants that they would not be a member of the bargaining unit is immaterial because Kuntzman did not state that he told this to Plaintiff specifically.

The trial judge has broad discretion to disregard an affidavit on summary judgment. See Corder v. Lucent Techs. Inc., 162 F.3d 924, 927 (7th Cir. 1998). Rule 56(c) of the Federal Rule of Civil Procedure provides that a party moving for summary judgment may support factual positions through affidavits. Such affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters states." Fed. R. Civ. P. 56(c)(4).

Although personal knowledge may include reasonable inferences, those inferences must be "grounded in observation or other first-hand personal experience.  They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience."  Visser v. Packer Eng'g Assocs., Inc., 924 F.2d 655, 659 (7th Cir. 1991).

Rule 701 of the Federal Rules of Evidence provides that a witness who is not testifying as an expert may offer opinions or inferences that are: "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702."  The district court has discretion to admit lay opinion testimony under Rule 701.  United States v. Espino, 32 F.3d 253, 256–57 (7th Cir. 1994).

First, in light of Fuerstenau's position as Superintendent of the District, Fuerstenau could reasonably be expected to have first-hand knowledge of making disciplinary and employment decisions regarding school employees, as described in paragraph 3 of his affidavit.  d/e 44, Ex. 3.  He was also in a position to coordinate and

conduct meetings in regards to employment discipline and termination for bargaining unit employees.  See id. at ¶ 6, 7, 8. Despite the lack of the explicit statement that Fuerstenau read the Master Agreement, Fuerstenau's assertion that Plaintiff was not a member of the bargaining unit and not subject to the Master Agreement is a reasonable statement given his position as a Superintendent who facilitated disciplinary and employment hearings with members of the collective bargaining unit. Accordingly, his statement has proper foundation and meets the personal knowledge requirement of Rule 56(c).

Second, Kuntzman's statement that it was "usual practice" to tell Technology Assistant that they would not be a member of the bargaining unit is admissible.  The statement was based on his personal knowledge and not scientific, technical, or specialized knowledge.  While Kuntzman does not allege that he specifically told this to Plaintiff, Kuntman's past experiences provide context and are helpful in understanding Kuntzman's testimony and his role as a supervisor to Plaintiff.

Lastly, Plaintiff correctly states that "self-serving statements in affidavits without factual support in the record carry no weight on

summary judgment." <u>Butts v. Aurora Health Care, Inc.</u>, 387 F.3d 921, 925 (7th Cir. 2004). Plaintiff argues against the affidavits in their entirety as self-serving. However, a court may consider self-serving statements in affidavits if they are based on personal knowledge and set forth specific facts. <u>Buie v. Quad/Graphics, Inc.</u>, 366 F.3d 496, 504 (7th Cir. 2004). As discussed above, Defendants Fuerstenau and Kuntzman's affidavits are based on their personal knowledge and set forth specific facts, in compliance with Rule 56(c). Therefore, the Court considers the statements made in Defendants Fuerstenau and Kuntzman's affidavits in its ruling on Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment.

**C. The undisputed facts, viewed in the light most favorable to Plaintiff, do not demonstrate that Plaintiff has a property interest in his employment pursuant to the Master Agreement because he was not a party to the contract.**

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. However, in order for a plaintiff "[t]o demonstrate a procedural due process violation of a property right, the plaintiff must establish

there is '(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process.'" <u>Khan v. Bland</u>, 630 F.3d 519, 527 (7th Cir. 2010).

Here, Plaintiff "cannot under Section 1983 complain of procedural due process violations unless the state has first deprived him . . . or such a constitutionally protected [property] interest." <u>See</u> <u>Lekas v. Briley</u>, 405 F.3d 602, 607 (7th Cir. 2005).  Therefore, "the threshold question is whether a protected property interest actually exists."  <u>Cole v. Milwaukee Area Tech. Coll. Dist.</u>, 634 F.3d 901, 904 (7th Cir. 2011).  A plaintiff claiming a procedural due process violation must plausibly allege that he has a cognizable property interest established by "an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  <u>Frey Corp. v. City of Peoria</u>, 735 F.3d 505, 509–10 (7th Cir. 2013) (quoting <u>Bd. of Regents of State Colls. v. Roth.</u>, 408 U.S. 564–77 (1972)).  In the employment context, "a protected property interest . . . can arise from a statute, regulation, municipal ordinance, or an express or implied contract."  <u>Covell v. Menkis</u>, 595 F.3d 673, 675–76 (7th Cir. 2010).

Because Plaintiff was employed in Illinois, the Court looks to Illinois law to determine whether he has a protected property interest in his continued employment.  See Bishop v. Wood, 426 U.S. 341, 344 (1976).  In Illinois, "a person has a property interest in his job only where he has a legitimate expectation of continued employment based on a legitimate claim of entitlement."  Moss v. Martin, 473 F.3d 694, 700 (7th Cir. 2007).  Accordingly, "[t]o show a legitimate expectation of continued employment, a plaintiff must show a specific ordinance, state law, contract or understanding limiting the ability of the state or state entity to discharge him."  Id. (citation omitted).  Illinois law presumes "an employment relationship without a fixed duration is terminable at will by either party."  See Duldulao v. Saint Mary of Nazareth Hosp. Ctr., 505 N.E.2d 314, 317–18 (Ill. 1987).  However, that presumption "can be overcome by demonstrating that the parties contracted otherwise."  Id. at 318.  "Property interests in employment may be created by express or implied contracts . . ."  Farmer v. Lane, 864 F.2d 473, 478 (7th Cir. 1988).

The parties dispute whether Plaintiff was a member of the collective bargaining unit and whether the Master Agreement

applies to him.  Defendants argue that Plaintiff was not a member of the bargaining unit because Plaintiff's position was listed on the Non-Bargaining Unit personnel sheets as "Technology Assistant" and that Plaintiff's salary of $34,953.00 for the 2018 school year matches the salary listed for the Technology Assistant on the list of Non-Bargaining Unit Personnel.  Defendants further argue that Plaintiff did not pay membership dues, or a fair share fee as required for members of the collective bargaining unit pursuant to the Master Agreement.  As discussed above, because the Court finds that Defendants failed to properly authenticate the Non-Bargaining Unit personnel sheets, the Court declines to consider them.

The Court finds that the undisputed evidence reveals that Plaintiff was not a member of the collective bargaining unit.  As a result, the Master Agreement did not apply to Plaintiff.  Plaintiff has not demonstrated that absent the Master Agreement, he has a constitutionally protected property interest.  The undisputed facts reveal that Plaintiff did not provide his signature on an authorization form for deductions as required for members of the collective bargaining unit.  <u>See</u> Plaintiff's Responses to Defendants'

Requests to Admit (d/e 44, Ex. 8, No. 19).  Plaintiff also does not
dispute that he did not pay membership dues or a fair share fee.
See Plaintiff's Responses to Defendants' Requests to Admit (d/e 44,
Ex. 8, No. 27); Cheli Paycheck Stubs (d/e 44, Ex. 9).  It is
undisputed that any member of the collective bargaining unit must
provide a signature on an authorization form, pay membership
dues, or pay a fair share fee.  See d/e 44, Ex. 1, Article IV, 4.12; Ex.
2, Article VII, 7.13.  Furthermore, Plaintiff does not dispute that
Article XII of the Master Agreement contained the salary schedules
for all personnel subject to the Master Agreement.  Moreover,
Plaintiff previously denied that his salary was listed in Article XII of
the Master Agreement (d/e 44, Ex. 7, Request No. 28 and
Response).  Although Plaintiff argues that the position of Computer
Aide, which is listed in Article XII of the Master Agreement,
"appears to be similar" to Plaintiff's position, Computer Aides are
paid hourly and Plaintiff had previously admitted an annual salary
of $34,953.00 for the 2018 school year.  See d/e 44, Ex. 6,
Interrogatory No. 15.  Again, the Court reiterates that Plaintiff had
previously denied that his salary was listed in Article XII of the
Master Agreement.

Plaintiff, in arguing that he was protected by the Master Agreement and that the Board regarded him as a union member, points to the resolution of the Board terminating his employment referring to him as a "Custodian Employee." However, the Court's examination of the Custodial Salary Schedule indicates that "all custodians hired after 7/1/13 will be paid at an hourly rate." d/e 44, Ex. 2, p. 14; see Fed. R. Civ. Pro. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). The undisputed materials facts state that Plaintiff began his employment on or about September 2014, and Plaintiff has previously admitted an annual salary of $34,953.00 for the 2018 school year. See d/e 44, Ex. 6, Interrogatory No. 15. Moreover, Plaintiff has cited no case law demonstrating that instances in which he may have been treated like a member of the bargaining unit effectively makes him a member of the unit.

Plaintiff also argues that the pre-termination and termination proceedings, albeit flawed, would not have been required absent his protection under the Master Agreement. Plaintiff cites no case law in support of his argument. The Court disagrees with Plaintiff. The existence of pre-termination and termination proceedings is not

indicative of having a property interest in employment.  Rather, it is the existence of a property interest in employment that necessitates proper due process protections under the Fourteenth Amendment. In other words, "if" there is a property interest, "then" due process protections are required.  Plaintiff has incorrectly inverted the if-then clauses: he argues that "if" there are pre-termination and termination proceedings, "then" there is a property interest.

Moreover, Article I of the Master Agreement recognizes the collective bargaining unit to include "full-time and regularly scheduled part-time cooks, custodians, secretaries, and aides" and excludes "certified employees, confidential, managerial and supervisory employees, as defined by the Illinois Educational Labor Relations Act."  d/e 44, Ex. 1.  The Illinois Educational Labor Relations Act (the "Act") provides "educational employees" the right to organize for collective bargaining.  115 ILCS 5/3(a).  "Educational employee" is defined therein as "any individual, excluding supervisors, managerial, confidential, short term employees, student, and part-time academic employees of community colleges employed full or part time by an educational employer[.]"  115 ILCS 5/2(b).  Although Defendants do not purport that any of the

exclusions to Act apply to Plaintiff, the Act makes clear that the Illinois Educational Labor Relations Board (IELRB) is empowered to recognize and determine the appropriateness of each collective bargaining unit.  115 ILCS 5/7(a), (b).  Section 7(a) does not require that a proposed unit be the "most appropriate unit"; rather, the unit need only be an "appropriate" unit.  <u>Cmty. College Dist. No. 509 v. Ill. Educational Labor Relations Bd.</u>, 660 N.E.2d 265, 270 (Ill. App. Ct. 1996).

Plaintiff's right as an "educational employee" to organize for collective bargaining is subject to the IELRB's determination of each collective bargaining unit.  The IELRB presumably chose to exclude the positions of Technology Coordinator and Technology Assistant from the collective bargaining unit.  <u>See</u> 115 ILCS 5/7(a), (b).  While Plaintiff argues potential other classifications, including being a "custodian employee" and a "Computer Aide," to bring him into the Master Agreement member classification, the Court has discussed above that the undisputed facts, viewed in a light most favorable to Plaintiff, do not demonstrate that Plaintiff fits those classifications. Ultimately, however, Plaintiff does not challenge the IELRB's determination of the collective bargaining unit.  Here, Plaintiff

points to the Master Agreement as the contract establishing that he had a legitimate expectation of continued employment.  However, the undisputed facts, viewed in a light most favorable to Plaintiff, demonstrate that Plaintiff had no property interest in his employment through the Master Agreement.

### D. Plaintiff can state claims for relief under the Fourteenth Amendment independently of the Illinois Labor Relations Act.

Citing the Illinois Educational Labor Relations Act (the Act), Defendants argue that, even if Plaintiff were a member of the collective bargaining unit, the Illinois Educational Labor Relations Board (IELRB), rather than this district court, is the proper tribunal for this action.  Plaintiff did not respond to this argument in his Response.

The Act states that that "[a] charge of unfair labor practice may be filed with the [IELRB]."  115 ILCS 5/15.  The Illinois Supreme Court has recognized that the IELRB has exclusive initial jurisdiction over charges alleging an unfair labor practice.  Proctor v. Bd. of Educ., Sch. Dist. 65, Evanston, Ill., 392 F. Supp. 2d 1026, 1031 (N.D. Ill. 2005); Bd. of Educ. Of Comm. Sch. Dist. No. 1 v. Compton, 526 N.E.2d 149, 151–52 (1988).  Subsequent review of

the IELRB's executive director's decision not to issue a complaint is appealable to the IELRB and ultimately to the appellate court on administrative review.  115 ILCS 5/16; <u>Proctor</u>, 392 F. Supp. 2d at 1031.

The Court agrees that the IELRB has exclusive initial jurisdiction over charges alleging an unfair labor practice.  However, while Defendants cite to cases in which the court found that the IELRB held initial exclusive jurisdiction, those plaintiffs brought an unfair labor practice claim under the Act itself.  <u>See</u> <u>Proctor</u>, 392 F. Supp. 2d at 1029–31 (finding that it lacked subject matter jurisdiction over plaintiff's claim for breach of the collective bargaining agreement by censoring freedom of expression and involuntarily transferring plaintiff); <u>Watson v. E. St. Louis Sch. Dist. 189</u>, No. 11-cv-0632, 2013 WL 497863 (S.D. Ill. Feb. 8, 2013) (finding that it lacked subject matter jurisdiction over plaintiff's claim that the union violated its duty of fair representation).  In contrast, here, Plaintiff is not attempting to bring an "unfair labor practice" claim under the Act.  Instead, Plaintiff's action is brought under 42 U.S.C. § 1983 to remedy alleged Fourteenth Amendment due process violations.

In <u>Sroga v. Preckwinkle</u>, the Northern District of Illinois found that the plaintiff could state a claim of relief on his state law claims independently of the Illinois Public Labor Relations Act.   No. 14 C 06594, 2017 WL 345549, at *9 (N.D. Ill. Jan. 24, 2017).   There, the plaintiff alleged that he was fired in retaliation for his union-organizing activity in violation of the Illinois Constitution's guarantee of the right to assemble and Illinois common law.  <u>Id.</u> at *8.  "[I]f a claim's viability depends on a statute that otherwise puts a comprehensive remedial scheme in the hands of an administrative agency, then the claim really is a statutory claim that is in that agency's exclusive jurisdiction."  <u>Id.</u> at *9; <u>see</u> <u>Mendez v. Perla Dental</u>, 646 F.3d 420, 422 (7th Cir. 2011) ("A claim is inextricably linked with the [a]ct if the [a]ct furnishes the legal duty that the employer is alleged to have violated.").

Here, to succeed on his procedural due process claim, Plaintiff must establish that there is "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process."  <u>Khan v. Bland</u>, 630 F.3d 519, 527 (7th Cir. 2010). Plaintiff's claim of a deprivation of procedural due process is not a duty attributed to Defendants under the Act.  Plaintiff has never

alleged that Defendants' violation of his due process rights was an unfair labor practice under the Act.  As a result, Plaintiff's § 1983 claims are independent of the Act, so they are outside of the IELRB's exclusive jurisdiction.

Defendants also argue under the Agreement that, even if Plaintiff were a member of the collective bargaining unit, Plaintiff failed to avail himself of any of the remedies available under the Act by failing to submit a self-determination petition to be included in the unit.  Defendants cite to Sedol Tchrs. Union v. Ill. Educ. Lab. Rels. Bd. to support their argument that Plaintiff could have filed a self-determination petition if he wished to be included in the collective bargaining unit.  658 N.E.2d 1364, 1370 (Ill. App. 1995). A self-determination petition may be filed by an employee to "add unrepresented employees to an existing bargaining unit, where a question concerning representation would be presented by their inclusion."  80 Ill. Admin. Code 1110.180(a)(1); see Sedol, 658 N.E.2d at 1370 ("To accrete employees into an existing unit, a self-determination petition must be filed with the proper showing of interest.").   Defendants also argue Plaintiff failed to avail himself of any remedies under the Act by failing to file an unfair labor practice

charge with the IELRB.  Similarly, Plaintiff only attempts to alleges § 1983 claims, not unfair labor practice claims under the Act. Plaintiff's § 1983 claims are independent of any unfair labor practice claims.  Defendant's arguments are inapplicable.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (d/e 44) is GRANTED and Plaintiff's Cross-Motion for Summary Judgment (d/e 45) is DENIED.  Because the Court grants the Defendants' Motion for Summary Judgment and finds that Plaintiff had no property interest in his employment because he is not a party to the Master Agreement, the Court does not reach Plaintiff's argument that he was denied due process at his pre-disciplinary and termination proceedings.  This case is closed.  The Clerk is directed to enter judgment in favor of Defendants.  Each party to bear its own costs.

**IT IS SO ORDERED.**
**ENTERED:  February 17, 2023**
**FOR THE COURT**

_/s/ Sue E. Myerscough_
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**